Good morning, may it please the court My name is Michael Hammer. I be appear on behalf of Beth Galloway the appellant in this action And in this action, we are appealing her conviction From trial of counts one two and three, but specifically the denial of the motion for judgment of acquittal By the district court judge in this case as well as the denial of the motion for new trial a Jones County who? Started a fire in a house. He owned in Martel, Iowa, and it was destroyed. He subsequently collected insurance on this house At the time he was living with my client in Olin, Iowa in a second house that she was renting or owned and Insurance money was collected and it was spent on various things My client was convicted of mail fraud in count one Use of fire and aiding and abetting the use of fire to commit a felony in count to That felony being the mail fraud from count one and then count three a conspiracy to commit money laundering The district court aired in the denial of the motion for judgment of acquittal on counts all counts Specifically counts one and two as there was no evidence from which the jury could have inferred By proof beyond a reasonable doubt that Beth Galloway had Knowledge the house was insured knowledge that Deputy plower intended to make the insurance claim knowledge ploward would make misrepresentations in this claim and knowledge that the mails would be used or that it was reasonably foreseeable as To count three the district court aired in finding that my client Beth Galloway Engaged in a financial transaction, which is one of the requirements for count three conspiracy to commit money laundering That financial transaction being the withdrawal of ten thousand dollars from Wells Fargo Bank What the court relied upon which we submit as an error Are some of the facts from trial? First that Beth Galloway and Jim plower had money problems And they had discussions about the money problems The court did ignore testimony from Jim plower himself that Beth Galloway had earned $52,000 in 2013 the year of the trial not only did she collect unemployment, but she also cashed out a 401k The court disregarded this and relied solely on Jim plowers testimony that they had money problems There was no other evidence in the record to that effect well, isn't cashing out a 401k evidence of some financial stress generally, I mean unless you're You're you're making some kind of qualified movement because you expose yourself to the tax liabilities That is correct judge She had gotten laid off from her job at the hospital and that led to the cashing of the 401k But $52,000 in income is pretty substantial Yeah, I get that but they were having trouble paying bills, that's the magic phrase, right? According to Jim plower. They were having trouble paying bills. There's no other testimony other than Jim's to show that That is correct. And he has both of us near that paying bills, right? I'm sorry judge he has the phrase but quote both of us very near the Quote paying bills unquote. That's correct in the same kind of Necessarily dispute that they were both paying bills We dispute that They both had money problems. Jim plower also testified that he was supporting his sick mother. He was giving money to his daughters he was Keeping up the bills on two houses That kind of evidence Lends to mr. Plower having certainly having the money problems, but Beth Galloway we would submit there's a lack of evidence that She was having money problems the essence of the court's decision in this well now two or three things You should address one is she previously tried to set this house on fire twice That's favorite. You know how we take the evidence at this point of the day. Okay, and she made statements to him about insurance Right, what statements did she make about insurance and to Beth Beth McPherson tell me mystic McPherson's name is McPherson. Tell me it is and that's a lady that worked at the bank that they subsequently took the $10,000 right not necessarily at the bank. I believe at the courthouse and put it in a drawer in her office But that's after the fact that doesn't make her guilty of Conducting a financial transaction or aiding and abetting a financial transaction As required by count three if you look at the elements of offense for count three Knew a transaction designed to conceal or I'm sorry agreed to conduct a financial transaction That's an element of the offense for count three and if you look at the evidence And we didn't raise this in our brief, but on page 50 and 51 in the trial transcript Mr. Plower testified he had already talked to his union rep after he had confessed to this crime and Agreed on a plan to withdraw money because he knew his accounts were going to freeze It doesn't say he sat down with Beth Galloway, and they discussed this and they agreed to do this He had already talked to his union rep about that and that's in the transcript of page 50 and 51 But the court asked about also the two Attempts and this was with her son or 17 year old son at the time Isaac Willie Williams Driving him over to the house, but those were unsuccessful attempts and there further There's no evidence that my client knew there was any insurance And I believe those are the speculative inferences that the court used to deny our motion for judgment of acquittal in this case Despite the fact she did drive the son over on two occasions. What did the court speculative? With take away from this now Well those fires were unsuccessful number one and number two is there's no evidence. They were done For any purpose other than to get rid of the house didn't they discuss not using accelerants, so they wouldn't be caught That according to Jim Plower they had two conversations prior to that and I cross-examined mr. Plower about that and and asked him about jokingly the first time that they had this Quote-unquote conversation about starting the fire, but the second time he did testify. He was at work. They did it over the phone and and discussed the possibility of Starting a fire and not using accelerants, so they would not be it would not be detected Why else would you burn down a house? Go there twice to do it if not for the insurance when it has a big mortgage, right? There's no evidence. She knew there was a big mortgage on there or insurance. I don't know that the more That's the paying the bills right go ahead the paying the bills. That's correct But the purpose is mr. Plower testified that Beth was on him all the time Beth Galloway to get the house fixed up or sell it and Several times he stated that in his testimony that He was getting a lot of pressure from Beth to fix it up or sell it and not to burn it down to conversations that He testified that Beth Galloway had with him number one joking about it number two over the phone talking about accelerants But going back to the Isaac Williams we would submit that because those fires were unsuccessful because of the Speculative inferences made by the court that she knew about insurance that those are non issues as far as related to Whether the court erred in denying our motion for judgment of acquittal What is I'm sorry, I can't figure out my notes. So I'll ask you I wrote down quote it could happen unquote It was their testimony about what the it was that could happen. I think that was a Time had with Beth Galloway and Beth Galloway made that comment according to Jim Plower during his testimony and she made that comment in response to Some sort of comment by Plower that his life would be easier if the house burnt down, right? Yes, her response is it could happen. That's correct here on and that's what the record reflects We're submitting that the court The essence of the court's decision finding that the jury could have inferred defendants knowledge that the house was insured Plower intended to make an insurance claim and it was foreseeable that the mail would be used Was an error because there's no evidence in the record. She had actual knowledge of insurance Prior to the fire. She certainly had the conversation with the person She gave the money afterwards, but that's not what the elements require for conviction It's prior knowledge or during the actual transaction and your theory on her interest in fire was is what the the time the money the the The fact that it was rid of the expenditures that they were having to make on the house and things like that not only that but to to save Jim Plower from having to fix it up and sell it or The time that he was spending over there judge I'll reserve the remainder of my time if you may mr. Hammer. Thank you. Mr. Malt Morfitt I May please the court as a judge beam said earlier this morning Jury verdict is not lightly To be lightly overturned and in this case the district court did not err when it denied the defendants motions for judgment of acquittal and judgment Promotion or judge or motion for a new trial because there was more than sufficient evidence as the district court laid out thoroughly and it's Of the defendants motions a couple of the points that this court has already Landed on in the prior argument the Judge Benton I believe you asked about this conversation that the defendant had with Jean McPherson is her name who worked at the city clerks Office who was a friend of Miss Galloway's? It was actually a few days after the fire So before there were any payments had been issued from the insurance company and this testimony was at page 200 or 201 of the trial transcript the Beth Galloway went into the city clerk's office to pay a bill and Talked about the fire with Ms. McPherson and said we're going to be getting insurance money So this is not as the defendant tried to make it sound after the checks had received how many days after? Ms. McPherson was not Could not recall specifically her testimony is after I heard about the fire, which was a few days after the fire had taken place I believe Beth was in my office. That's the best a few days. Yes, your honor and Evidence is that the fire occurred on July 25th. The insurance payments were received sometime in the middle of August August 13th I believe is when they were mailed So this conversation would have occurred before the actual mailings that are the third element of mail fraud So this is during the scheme This is during the transaction as the defendant called it in which she acknowledged we are getting insurance money Beyond that there is other evidence in the record as the court has already noted. They're paying bills together They're maintaining two houses even if but you had no proof of insurance bills, right? Just bills generally in correct statements. He was not asked specifically Did you share insurance bills? But they did talk about both paying on both houses as the defendant mentioned. She was a homeowner or home renter She has insurance on that house So it's common knowledge, it's common sense we ask our juries to apply common sense and as I believe it was judge Benton again mentioned why else would you burn down this house and Okay to avoid having to go over there and work on it Well, I I don't believe there was any testimony that he was actually going to work on it She may have been telling him to go do so but as I recall, mr. Plowers testimony, he said Yeah, I had a saw there and I went over once in a while, but I wasn't really doing anything with it And besides which if you look at the photos of what this house looked like after the fire There was still a whole heck of a lot of work that had to be done on it because it didn't burn to the ground it's not like this fire burned it to the Concrete foundation it burn in the end. There were no accelerants, right? Correct, your honor. There were no accelerants as they had discussed And that is one of the two factors that shows that Miss Galloway knew what she was doing was in a scheme to defraud or to get insurance money Because she wanted to avoid detection as shown by the discussion about not using accelerants But she also wanted to avoid detection as shown by the fact that she drove her teenage son over there at Approximately two o'clock in the morning to light the house on fire If what you're trying to do is get rid of a public nuisance You don't go do that at two o'clock in the morning. You do that at a normal time here She's doing it because she that's surely not evidence in the record. Is it as to how when how arsonists think? no, your honor, but I think it's common sense that if This is the countryside, right? It's a small town. It is in town If you see the photos of the house, there are as a an abandoned school right next door and you can see some houses around So I thought it was more rural. Thank you. Yes, your honor And as the As to count three the money laundering Defendant in his brief and in argument said there's no evidence the defendant conducted or engaged I think was the language a financial transaction That's not what the evidence had to show to support the guilty verdict on count three had to show that the defendant Agreed that a financial transaction would be conducted that was designed to conceal the skies hide the money and here We have the discussion telling the distinction you're making is an engage in the federal statute I don't know if it's in the statute and certainly somebody had to engage in a financial transaction for the substantive offense of money laundering Here she's charged with conspiracy money laundering There was a conversation that Mr. Plower testified about that occurred in the car when the defendant was giving him a ride home after he'd been confronted by law enforcement That conversation was our assets are going to be frozen. I'm a cop. I know how this works We need to protect our money we need to have something to live in and this was a conversation between the defendant and Mr. Plower shortly after the crime was discovered, but before law enforcement knew about her involvement because mr. Plower initially denied that she was involved in an attempt and he testified under an agreement right he did under a cooperation agreement your honor and he Has since received a sentence reduction after the government's motion due to his cooperation So they they agreed specifically to do this transaction and mr. Plower testified it was from the bank account that the insurance proceeds had gone into that they were going to take ten thousand from that Give it to ms. McPherson so that they could have some money to live on in case law enforcement took their money that's clearly an agreement a Conspiracy to Attempt to hide this money from law enforcement to disguise who had control of it who owned it where it was So the evidence was more than sufficient on count three regarding count to This defendant aided and abetted Two people in the use of fire she drove her teenage son there for the express purpose of using fire on the house And it was twice right? Yes, they and each time was very similar They got in the car at two o'clock or sometime in the middle of the night discussed. We're gonna go there We're gonna try and light it on fire They drove over a matter of miles, it's 13 14 miles, I think difference between the two towns She parked in the abandoned school parking lot. He walked into the house was gone came back and She asked did you get it going? I believe the first time he said no the second time He was more equivocal as I recall But in any event, it's clear that she knew the purpose was for him to try and light the house on fire And then she also aided and abetted Mr. Plower in his use of fire That he also tried tried on two occasions to light it on fire successfully the second time and in both occasions He testified that he got up told her where he was going again It was in the middle of the night and when she came when he came back both times. They listened to the dispatch radio He's a you know ambulance driver and a cop So he has the radio that can hear when the fire call goes out and they laid in bed Early in the morning to listen to the radio hoping to hear that the house had been Caught on fire the second time it did so she had plenty of opportunity to Stop him to withdraw to not participate in the scheme and in this use of fire and she chose not to I want to go back to count three for just a moment Because I want to focus in what the what the exact agreement was, right? Because you know if you think about conspiracy, we need an agreement with an unlawful end in this case It's a money laundering conspiracy. So the unlawful end is and must be related to some financial transaction. There are two kind of separate financial transactions that are Floating around inside the case The one is the claim for the insurance proceeds and then the deposit of the proceeds and I'd call that Transaction is sitting out. There's one then there's the withdrawal from the bank the second time and then the Taking of the withdrawal proceeds and depositing them so to speak In the city clerk's office. There's irony there, by the way in any event The the question I've got is which transaction did? Ms. Galloway agree to participate in what's the what's the agreement? Yes. Well, I would say she agreed to participate in both But the receiving of the money goes more to the mail fraud Specifically for the money laundering count the transaction she agreed to that Is important for that count is the withdrawal of the $10,000 from the bank account You have to have a federally insured institution involved right the way you put the way you plated it. Yes charged it I mean, yes, your honor and we read in there was a stipulation of fact that this particular bank I think it was Wells Fargo and a perhaps There was a stipulation between the parties that they were so it's the withdrawal she had to agree to Is that your real bottom line? Yes, your honor that they and that's specifically what they discussed in that car was we need to get money out of our bank account Before it gets frozen and that's what mr Plower did within the next couple of days and then they took the money to hide it with ms McPherson the fact that they're hiding it and I I think there was testimony that it was even in a brown paper bag and Stashed in a drawer insurance office. She ms. Galloway delivered it to ms. McPherson, right both. Mr. Plower and both Okay, so I misunderstood yes, your honor they were both present at the time was miss both flowers and miss ms McPherson's testimony and then both mr. Plower, but primarily ms Galloway would go get money go get cash out of this a brown paper sack when they needed to pay bills So she clearly knew what they were doing and agreed that they needed to hide this money from law enforcement And get it out of the bank account. I Only question just spring in my head. I assume by the way, our case looks that misplot. Mr. Plower has no appeal, right? Correct, your honor. I think he may have even signed in a waiver of appeal. Yes Regardless the reason there's no appeal in the plow our case. Correct, your honor. Thank you Mr. Lohan Thank you your honor a couple things that the government brought up First off we take issue with His statements that Mr. Plower told miss Galloway prior to going over both occasions to start the fire We believe when I cross-examined him on page 60 and 61 of the transcript he acknowledged Well, maybe I didn't so there was no unequivocal testimony from mr Plower that miss Galloway knew in advance He was going over to start the fires and I just wanted to point that Okay, but they didn't listen to the radio together right after the fact they did listen to the radio. That's correct a couple other things We don't deny that testimony from miss McPherson came out that miss Galloway was over there a few days after We're stating that Perhaps a factor the court could look at and making an inference of knowledge of insurance But the there's also the fact that this is after the fire had occurred after the structure had burned down and we don't know the Conversations because of lack of evidence between mr. Plower and miss Galloway at that time we take issue with common knowledge that houses are insured. I don't know that that meets a standard I believe we have the Dale case in the in the Mac cases I believe judge beam was on the Mac case back in 2005 the Dale case judge Arnold dissented in that case as related to one of the multiple defendants in a murder conspiracy Specifically talking about inferences and he said unless the inference drawn is sufficiently strong to support a guilty verdict Beyond a reasonable doubt a verdict should be reversed. That's a high standard As this court certainly knows we also The government mentioned the drive home After he confessed well page 50 and 51 also talks about mr. Plower testifying He immediately after his confession met with his union rep and they discussed various options What was going to happen and at that point? Mr. Plower said? The union rep advised him to take money out because of his accounts were going to be frozen he had already made that decision While meeting with his union rep There was no decision or acquiescence or agreement by miss Galloway during the drive home at least not In accordance with mr. Plower's testimony the union rep was a law enforcement officer, too. That's correct Thank you on the Jones County Sheriff's Department. That's correct as for avoiding detection again, the Isaac Williams Facts That she drove him over the house on two occasions is irrelevant because Without showing beyond a reasonable doubt. She knew it was insured Further those fires were unsuccessful. So it didn't lead to any mail fraud. It did not lead to any money laundering or any of the other Things that she was charged with We would submit that the financial transaction that's a basis for count three must be based on the $10,000 withdrawn from Wells Fargo. That's the only financial transaction that meets the federal standard and Because mr. Plower had already decided to do that after meeting with his union rep She can't be found guilty of that because there's nothing in the evidence Showing that they talked about it and she agreed with it or or that they came to that decision together There's a number of things. I'd like to use in the remainder of my time that shows why? why the courts speculating when it Talks about all of the things The inference of knowledge into insurance Jim Plower's name was the sole name on this policy Exclusively he had a PO box in Martel only he had the key Beth Galloway had no access to it The insurance bills came to that PO box Jim Plower got the 5,000 debit card immediately was the method of paying the bills I know the paying the bills is a big thing was the method of paying bills in the record It was not your okay. Go ahead. The government did not establish how those records were paid Further the nationwide insurance rep said most transactions these days are done electronically again that goes to whether the mail Use of the mail was foreseeable Which I believe the court can take a look at that agent's testimony and and make that determination Further the court never made a fine. Did he qualify the most? You said most was that his testimony or did he do better on numbers than that? He he did not said most Okay, that's correct. You're see. All right I just asked the court to consider the record and Grant our appeal. Thank you. Thank you Thank you counsel for the argument case number 18 dash 1894 is submitted for decision by the court